IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISIONS

| | | |
|---|---|---|
| **NIKELA H.,** | § | |
|     **PLAINTIFF,** | § | |
| | § | |
| V. | § | **CASE NO. 3:22-CV-939-N-BK** |
| | § | |
| **COMMISSIONER OF THE SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
|     **DEFENDANT.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636 and *Special Order 3*, this appeal of the denial of Plaintiff's application for social security disability benefits is before the undersigned magistrate judge for findings and a recommended disposition. As detailed here, the Commissioner's decision should be **AFFIRMED**.

**I. BACKGROUND**

    A. **Procedural History**[1]

Plaintiff seeks judicial review of a final decision of the Commissioner denying her claim for supplemental security income under Title II of the Social Security Act ("Act"). Plaintiff filed her original application for benefits in March 2012, alleging that she could no longer work as of

---

[1] Unless otherwise noted, the facts are drawn from this Court's prior opinion remanding for further administrative proceedings due to the administrative law judge's failure to adhere to the strictures of *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995). *See Nikela H. v. Saul*, 3:18-CV-1519-G-BK, 2019 WL 4578925, at *1 (N.D. Tex. Aug. 30, 2019) (Toliver, J.), *adopted by* 2019 WL 4572781 (N.D. Tex. Sept. 20, 2019) (Fish, J.) ("*Nikela I*").

the preceding month.  Following the denial of that claim, and prior to filing *Nikela I*, Plaintiff filed a new application for benefits in March 2017 which also alleged a disability onset date of February 2012.  After that application was denied, the opinion in *Nikela I* issued and, on remand, the administrative proceedings were consolidated.  Doc. 14-1 at 12-13.  Upon the denial of Plaintiff's consolidated application, she appealed to this Court pursuant to 42 U.S.C. § 405(g).

### B.  Factual Background

Plaintiff was 37 years old on her alleged onset date and has a high school equivalency degree and past relevant work as a security guard and insurance contract reviewer.  Doc. 14-1 at 51.  In terms of her relevant medical history, Nurse Practitioner Natasha Simmons first saw Plaintiff in December 2012.  Plaintiff described feeling sad most of the day, crying spells, agitation, and irritability following her separation from an abusive husband.  She reported having been molested by a brother and an uncle.  NP Simmons diagnosed Plaintiff with major depressive disorder and started her on an antidepressant.[2]

Throughout 2013, Plaintiff reported talking to her dead mother and hearing voices on a daily basis, and although her thoughts were organized, her memory was not intact, and her attention was impaired.  NP Simmons increased her antidepressant and started her on medications for insomnia and psychosis/auditory hallucinations.  By October 2013, Plaintiff reported crying spells, sleep disturbance, paranoia, chronic mood disturbance, racing thoughts, hallucinations/delusions, and anger outbursts.  Further, while Plaintiff reported improved depression, she was also now hearing the voice of the brother who had molested her.

---

[2] During the relevant period, Plaintiff also had an extensive history of treatment for multiple physical conditions.  However, because the focus of Plaintiff's brief is the ALJ's mental residual functional capacity ("RFC") finding, the Court limits its discussion accordingly.

In October 2013, Plaintiff's primary attending physician, Dr. Zareena Raffi, M.D., and NP Simmons opined that Plaintiff had a substantial loss[3] in the ability to (1) carry out detailed but uninvolved written or oral instructions; (2) maintain concentration/attention for an extended period (two hours); (3) perform at a consistent pace; (4) make simple work-related decisions and ask simple questions; (5) accept instructions and respond appropriately to criticism from supervisors; (6) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; (7) respond appropriately to changes in a routine work setting and cope with normal work stress; and (8) finish a normal work week without interruption from her psychological symptoms. Dr. Raffi and NP Simmons diagnosed Plaintiff with major depressive disorder, recurrent, severe with psychotic features, and opined Plaintiff would miss more than four days of work a month due to her condition.

In February 2014, Dr. Paul P. Schorr, D.O., examined Plaintiff and noted that she described having auditory hallucinations of her father's and brother's voices and experiencing anxiety and depression. Doc. 14-2 at 80. Dr. Schorr opined that Plaintiff's pain, fatigue, and other symptoms were severe enough to interfere with her attention, focus, and concentration "nearly constantly" and her impairments were expected to last at least 12 months. Doc. 14-2 at 84. Dr. Schorr concluded that Plaintiff was incapable of even low stress work, would need to take frequent, unscheduled breaks, and would likely be absent from work more than three times a month. Doc. 14-2 at 84.

---

[3] "Substantial loss" is defined as the "loss of ability to perform the named activity in regular, competitive employment [eight-hour day] and, at best, could do so only in a sheltered work setting where special considerations and attention are provided." Doc. 15-1 at 488.

3

Plaintiff continued to demonstrate mental health issues thereafter, often presenting with psychosis, auditory hallucinations, paranoia, anxiety, impaired attention, depression, unstable mood, and memory problems, but these symptoms substantially improved—and many even disappeared over time—when she consistently took her prescription medication. Doc. 14-2 at 660, 667, 674, 693, 699; Doc. 14-3 at 412-14, 441; Doc. 14-4 at 339-40, 343, 350; Doc. 14-5 at 4-5, 7, 12, 23, 25-26, 28; Doc. 14-5 at 349, 366. In February 2021, Dr. Shazia Basit, M.D., Plaintiff's primary physician at Metrocare, completed a Functional Disability Assessment form which essentially mirrored the October 2013 assessment by Dr. Raffi and NP Simmons. Doc. 14-5 at 380-81.

### C. The ALJ's Findings

In January 2022, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff has the severe impairments of (1) status-post left ankle fracture with open reduction and internal fixation and hardware removal; (2) status-post left small finger surgery post injury; (3) degenerative joint disease of the knee; (4) degenerative disc disease of the lumbar spine; (5) pre-diabetes mellitus/diabetes mellitus; (6) obesity; and (7) depression with psychosis. Doc. 14-1 at 17. With respect to her mental abilities, the ALJ found that Plaintiff had (1) moderate limitations in understanding, remembering, or applying information, interacting with others, and concentrating/maintaining pace and (2) a mild limitation in her ability to adapt and manage herself. Doc. 14-1 at 41-42. The ALJ then determined that Plaintiff could perform simple, routine tasks and make simple decisions in an environment that involves few, if any, workplace changes and no more than occasional contact with supervisors, coworkers, and the public. Doc. 14-1 at 43. The ALJ determined that Plaintiff had the RFC to perform a restricted range of light work from her February 2012 onset date through the date of the decision. Doc. 14-1 at 43.

While Plaintiff could not perform any of her past work, the ALJ concluded she could perform other work in the national economy and was thus not disabled.  Doc. 14-1 at 54.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Grid Rules, vocational

expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other.

### III. ANALYSIS

As in *Nikela I*, Plaintiff argues that the ALJ's assessment of her RFC is unsupported because the ALJ made her own independent medical determinations about Plaintiff's ability to work without any supporting expert medical opinions and after rejecting the opinions of NP Simmons, and Drs. Raffi, Schorr, and Basit in violation of *Ripley*. Doc. 17 at 22-29. Plaintiff maintains that the error was prejudicial because the ALJ's RFC assessment was not supported by any underlying medical opinion evidence, and the outcome might have been different had the ALJ obtained updated opinions from Plaintiff's providers. Doc. 17 at 28-31.

Defendant responds that the ALJ properly interpreted the medical evidence in determining Plaintiff's capacity to work, and that substantial evidence supports the ALJ's RFC

decision, which reached a middle ground between the conclusions of Plaintiff's providers and the state agency medical consultants ("SAMCs") which rated her abilities higher. Doc. 19 at 3-5, 8-10. In particular, Defendant points to the 2017 opinions of Dr. Deborah D. Gambles, PsyD., and SAMCs Dr. Matthew Turner, Ph.D., and Dr. Jean Germain, Ph.D. Doc. 19 at 5-6.

The RFC is an assessment, based on all relevant evidence, of a claimant's ability to work, despite her impairments. 20 C.F.R. § 416.945(a). Stated differently, it is the most a claimant can do, notwithstanding her physical and mental limitations. *Id.* The RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam).

In *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), the ALJ ruled that a claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion. *Ripley*, 67 F.3d at 557. The appellate court noted that the claimant's record contained a vast amount of evidence establishing that he had a back problem, but did not clearly establish what effect that condition had on his ability to work. *Id.* Thus, the court remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557-58. The *Ripley* panel explained, however, that "[t]he absence of such a statement . . . does not, in itself, make the record incomplete." *Id.* at 557. Rather, reversal is only appropriate if the claimant can show prejudice, i.e., "that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

Dr. Gambles' review of the medical evidence was limited to March 2012 through April 2014. Doc. 14-2 at 225. Dr. Gambles stated that although Plaintiff's symptoms were "severe," they did not meet or equal a Listing or "impede [her] ability to sustain gainful activity." Doc.

14-2 at 225. Dr. Turner opined that Plaintiff had only mild limitations in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, and maintaining pace; and (4) adapting and managing herself. Doc. 14-1 at 201. Dr. Germain concurred with this assessment. Doc. 14-1 at 214.

  The ALJ concluded that the opinions of Dr. Schorr and Plaintiff's treating sources were generally inconsistent with the evidence of record, and she gave Dr. Schorr's opinion "little evidentiary weight," instead finding the SAMC's opinions "far more consistent" and "entitled to greater evidentiary weight." Doc. 14-1 at 49-50. In particular, the ALJ pointed to Plaintiff's inconsistent medication compliance, her hearing testimony, and her daily activities, which included brief periods of employment and caring for several young children. Doc. 14-1 at 50.

  As an initial matter, this case is distinguishable from Plaintiff's prior appeal in which the SAMCs made no medical assessments because they determined she had no severe impairments, but the ALJ also rejected her treating physicians' opinions. *See Nikela I*, 2019 WL 4578925 at *3-4. By contrast, the ALJ here found the SAMCs' and Dr. Gambles' opinions largely persuasive and relied on them in formulating Plaintiff's RFC. The ALJ also did not err by including additional restrictions in her RFC assessment. *See Vasquez v. Comm'r of Soc. Sec.*, 7:21-CV-00028-O-BP, 2022 WL 2975471, at *5 (N.D. Tex. June 30, 2022) (finding no error where the ALJ imposed more restrictions on than claimant's activities than the limitations determined by the SAMCs), *adopted by* 2022 WL 2972240 (N.D. Tex. July 26, 2022); *Ernest A.J. v. Saul*, No. 1:18-CV-00194-BU, 2020 WL 6877706, at *14 (N.D. Tex. Oct. 19, 2020) (same), *adopted by* 2020 WL 6873609 (N.D. Tex. Nov. 23, 2020); *Michael L. v. Berryhill*, No. 3:18-CV-0010-G-BK, 2019 WL 1243866, at *5 (N.D. Tex. Feb. 20, 2019) (Toliver, J.) (same), *adopted by* 2019 WL 1244076 (N.D. Tex. Mar. 18, 2019); *cf. Henline v. Commr., Soc. Sec.*

8

*Admin.*, 3:20-CV-1944-D-BH, 2022 WL 850102, at *16 (N.D. Tex. Mar. 4, 2022), *adopted by* 2022 WL 847237 (N.D. Tex. Mar. 22, 2022) (Fitzwater, J.) (reversing based on *Ripley* where the only evidence of record addressing the claimant's ability to work was the SAMC's opinion, which the ALJ largely rejected when choosing to impose less restrictive RFC limitations).

Here, the ALJ's RFC finding was based on substantial evidence in the form of more than 3,700 pages of medical records, Plaintiff's ability to maintain substantial gainful employment as a security guard for 11 months from 2018 to early 2019, her activities of daily living, which included raising several children for her relatives, and the testimony given at the administrative hearing. The ALJ set forth her findings in a detailed 45-page opinion, and nothing in the record suggests that the ALJ needed any more medical information, such as updated opinions from Plaintiff's providers, to reach an informed decision about whether Plaintiff was disabled. *See Webster*, 19 F.4th at 720.

Although the ALJ's mental RFC finding does not mirror the SAMC's medical opinions, "it cannot be said that [the] decision was not based on substantial evidence." *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) (affirming where the ALJ rejected the testimony of the claimant's examining physician as inconsistent with the longitudinal medical evidence, which showed improvement, and declined to adopt the SAMC's more restrictive limitations verbatim); *see also Wills v. Kijakazi*, No. 22-20609, 2023 WL 4015174, at *4 (5th Cir. June 14, 2023) (unpublished) (holding that the ALJ's RFC determination was adequately supported despite her imposition of additional restrictions beyond those noted by the SAMC). In sum, the ALJ's decision here was adequately supported by substantial evidence based on a sufficiently developed record.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on September 8, 2023.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).